IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| DANIQUEA HOUSTON, | |
| Plaintiff, | Civil Action File No. |
| vs. | |
| GUARDIAN PROTECTIVE SERVICES, LLC, | |
| Defendant. | |

## Complaint

Plaintiff Daniquea Houston ("Houston"), by and through undersigned counsel and pursuant to Fed. R. Civ. P. 7, brings this Complaint against Defendant Guardian Protective Services, LLC ("Guardian") and shows the Court as follows:

**1. INTRODUCTION**

1.

This is an FLSA case. Plaintiff brings this action because Defendant failed to pay Houston at one-and-one half times her regular hourly rate for all work performed over forty hours during each work week of her employment.

## 2. JURISDICTION AND VENUE

2.

This Court has subject matter jurisdiction over the present action under Article III, § 2 of the United States Constitution, FLSA §16(b), 29 U.S.C. § 216(b), 28 U. S.C § 1331, because this case arises under the FLSA, a federal statute that affects interstate commerce.

3.

Venue properly lies in the Northern District of Georgia under 28 U.S.C. § 1391 because Guardian is located in this judicial district and a substantial portion of the events giving rise to the claims herein arose in this judicial district.

## 3. THE PARTIES

4.

Houston resides in Clayton County, Georgia.

5.

At all times material hereto, Guardian has been an "employer" of Houston as defined in FLSA § 3(d), 29 U.S.C. §203(d).

6.

At all times material hereto, Houston has been an "employee" of "Guardian " as defined in the FLSA § 3(e)(1), 29 U.S.C. § 203(e)(1).

7.

Guardian is a corporation organized under the laws of the State of Georgia.

8.

Guardian is subject to the personal jurisdiction of this Court.

9.

Guardian may be served with process through its registered agent Benjamin T. Maner at 2839 Church Street, East Point, Georgia 30344.

A.  **Individual Coverage:**

10.

From on or about October 25, 2015 until January 9, 2017 ("the relevant time period"), Houston was "engaged in commerce" as an employee of Guardian as defined in the FLSA, § 7(a)(1), 29 U.S.C. § 207(a)(1) in that she served as a security guard for construction related to interstate commerce.

**B. Enterprise Coverage:**

11.

During the relevant time period, Guardian was an "enterprise engaged in commerce or in the production of goods for commerce" as defined in the FLSA, § 7(a)(1), 29 U.S.C. § 207(a)(1).

12.

During 2015, Guardian had two or more "employees engaged in commerce" as defined by 29 U.S.C. § 203(s)(1)(A).

13.

During 2016, Guardian had two or more "employees engaged in commerce" as defined by 29 U.S.C. § 203(s)(1)(A).

14.

During 2017, Guardian had two or more "employees engaged in commerce" as defined by 29 U.S.C. § 203(s)(1)(A).

15.

During the relevant time period, two more employees of Guardian used the following instrumentalities of commerce in the performance of its commercial

purposes: U.S. Mail, interstate phone service, interstate computer networks, cell phones, uniforms, office furniture.

16.

During 2015, Guardian had two or more "employees handling, selling or otherwise working on goods or materials that have been moved in or produced for commerce by any person." as defined in 29 U.S.C. § 203(s)(1)(A).

17.

During 2016, Guardian had two or more "employees handling, selling or otherwise working on goods or materials that have been moved in or produced for commerce by any person." as defined in 29 U.S.C. § 203(s)(1)(A).

18.

During 2017, Guardian had two or more "employees handling, selling or otherwise working on goods or materials that have been moved in or produced for commerce by any person." as defined in 29 U.S.C. § 203(s)(1)(A).

19.

During 2015, Guardian had an annual gross volume of sales made or business done of not less than $500,000 (exclusive of excise taxes at the retail level that are separately stated) within the meaning of 29 U.S.C. § 203(s)(1)(A).

20.

During 2016, Guardian had an annual gross volume of sales made or business done of not less than $500,000 (exclusive of excise taxes at the retail level that are separately stated) within the meaning of 29 U.S.C. § 203(s)(1)(A).

21.

During 2017, Guardian had an annual gross volume of sales made or business done of not less than $500,000 (exclusive of excise taxes at the retail level that are separately stated) within the meaning of 29 U.S.C. § 203(s)(1)(A).

22.

At all times material hereto, Guardian was an "enterprise engaged in commerce or in the production of goods for commerce" as defined in FLSA § 3(s)(1), 29 U.S.C. § 203(s)(1).

### c. Exemption issues and additional factual allegations:

23.

At all times material hereto, Plaintiff was not exempt from the maximum hour requirements of the FLSA by reason of any exemption.

24.

At all times material hereto, Guardian did not employ Houston in a bona fide professional capacity within the meaning of 29 USC § 213 (a).

25.

At all times material hereto, Guardian did not employ Houston in a bona fide administrative capacity within the meaning of 29 USC § 213 (a).

26.

At all times material hereto, Guardian did not employ Houston in a bona fide executive capacity within the meaning of 29 USC § 213 (a).

27.

At all times material hereto, Guardian did not employ Houston in the capacity of an "outside salesman" so as to be exempt from the minimum and maximum hour requirements of 29 USC § 213 (a).

28.

Guardian employed Houston as a Utility Officer from approximately October 25, 2015 through January 9, 2017.

29.

During the relevant time period, Houston's primary duty was to perform security services on behalf of Guardian's clients.

30.

During the relevant time period, Guardian assigned Houston each job assignment by either telephone call or text message.

31.

During the relevant time period, Guardian required Houston to clock in at the beginning of each work shift by calling a toll-free number and entering a pin number.

32.

During the relevant time period, Guardian required Houston to clock out at the end of each work shift by calling a toll-free number and entering a pin number.

33.

During the relevant time period, Guardian was aware of the actual number of hours that Houston worked during each work week.

34.

During the relevant time period, Guardian compensated Houston at an hourly rate of pay for each hour she worked.

35.

During the relevant time period, Guardian compensated Houston at an hourly rate of either $10.00 or $13.00 based on the job assignment.

36.

During the relevant time period, Guardian compensated Houston via direct deposit.

37.

During the relevant time period, the hours Houston worked each work week varied based on job assignments.

38.

During the relevant time period, Houston worked in excess of 40 hours during most work weeks.

39.

During the relevant time period, Houston regularly worked 50-60 hours during most work weeks.

40.

During the relevant time period, Guardian issued Houston a separate check for the overtime hours she worked during each week at her regular hourly rate of either $10.00 or $13.00 for each overtime hour she worked.

41.

This second, separate check did not include any payments for the overtime premium.

42.

During the relevant time period, Houston reported to supervisor Tim Kates regarding issues with job assignments, hours and pay.

43.

During the relevant time period, Guardian failed to rectify Houston's concerns regarding her pay.

44.

During the relevant time period, Guardian failed to compensate Houston at one and one half times her regular hourly rate for each hour she worked in excess of 40 hours during each work week.

COUNT I — FAILURE TO PAY OVERTIME AS TO ALL DEFENDANTS

45.

The allegations in all previous paragraphs are incorporated by reference as if fully set out in this paragraph.

46.

At all times material hereto, Houston has been an employee covered by the FLSA and entitled to the overtime protections set forth in FLSA § 7(a), 29 U.S.C. § 207(a).

47.

During her employment with Guardian, Houston regularly worked in excess of forty (40) hours each week.

48.

Guardian failed to pay Houston at one and one half times her regular rate for work in excess of forty (40) hours in any week from approximately October 25, 2015 through January 9, 2017.

49.

Guardian willfully failed to pay Houston at one and one half times her regular hourly rate for work in excess of forty (40) hours in any week from approximately October 25, 2015 through January 9, 2017.

50.

Houston is entitled to payment of overtime in an amount to be determined at trial, in accordance with FLSA § 16(b), 29 U.S.C. § 216(b).

51.

As a result of the underpayment of overtime compensation as alleged above, Houston is entitled to liquidated damages in accordance with FLSA § 16(b), 29 U.S.C. § 216(b).

52.

As a result of the underpayment of overtime compensation as alleged above, Houston is entitled to her litigation costs, including her reasonable attorney's fees in accordance with FLSA § 16(b); 29 U.S.C. § 216(b).

WHEREFORE, Plaintiff respectfully prays:

1. That Plaintiff's claims be tried before a jury;

2. That Plaintiff be awarded an amount to be determined at trial against Defendant in unpaid overtime compensation due under the FLSA, plus an additional like amount in liquidated damages;

3. That Plaintiff be awarded costs of litigation, including her reasonable attorneys' fees from Defendant; and

4. For such other and further relief as the Court deems just and proper.

Respectfully submitted,

                                                                              ***DELONG CALDWELL BRIDGERS FITZPATRICK & BENJAMIN, LLC***

| | |
|---|---|
| 3100 CENTENNIAL TOWER | */S/CHARLES R. BRIDGERS* |
| 101 MARIETTA STREET | CHARLES R. BRIDGERS |
| ATLANTA, GEORGIA 30303 | GA. BAR NO. 080791 |
| (404) 979-3150 | |
| (404) 979-3170 (f) | */S/ KEVIN D. FITZPATRICK, JR.* |
| kevin.fitzpatrick@dcbflegal.com | KEVIN D. FITZPATRICK, JR. |
| charlesbridgers@dcbflegal.com | GA. BAR NO. 262375 |

                                                                              COUNSEL FOR PLAINTIFF